MORGAN, LEWIS & BOCKIUS LLP
JOHN S. BATTENFELD (SBN 119513)
KATHY H. GAO (SBN 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
Tel: 213.612.2500
Fax: 213.612.2501
email: john.battenfeld@morganlewis.com
email: kathy.gao@morganlewis.com

Attorneys for Defendant
ADVANCED DRAINAGE SYSTEMS, INC.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALVIN HAYES;** individually, and on behalf of other members of the general public similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**ADVANCED DRAINAGE SYSTEMS, INC.,** a California corporation; and **DOES 1 through 50**, inclusive,<br><br>　　　　　　　Defendants. | Case No.  1:17-at-00463<br><br>**CLASS ACTION**<br><br>**DEFENDANT ADVANCED DRAINAGE SYSTEMS, INC.'S NOTICE OF REMOVAL**<br><br>Jurisdiction Under the Class Action Fairness Act of 2005<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453]<br><br>Action Filed:  May 5, 2017 |

**DEFENDANT'S NOTICE OF REMOVAL**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF ALVIN HAYES AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Advanced Drainage Systems, Inc. ("Defendant") hereby removes the above-captioned action from the Superior Court of the State of California, for the County of Kern, to the United States District Court, Eastern District of California, Fresno Division, pursuant to 28 U.S.C. §§ 1332(d) and 1446.

As required by 28 U.S.C. § 1446(d), Defendant will file in Superior Court and serve upon Plaintiff and his counsel of record a notice to State Court and Adverse Party of Removal of Civil Action to Federal Court (with these removal papers attached).

In support of this Notice of Removal, Defendant states the following:

**PROCEDURAL HISTORY**

1.   On May 5, 2017, Plaintiff Alvin Hayes ("Plaintiff") filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of California, County of Kern, styled *Alvin Hayes; individually and on behalf of other members of the general public similarly situated v. Advanced Drainage Systems, Inc., a California corporation; and Does 1-50, inclusive*, Case Number BCV-17-101019 (the "State Court Action"). Defendant was served with a copy of the Complaint on May 11, 2017. A true and correct copy of the Complaint and Notice of Service of Process is attached hereto as **Exhibit A** ("Plf's Compl.").

2.   The Kern County Superior Court issued a Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause re: CRC 3.110 and Notice of Case Management Conference ("Notice of Assignment") on May 9, 2017. A true and correct copy of the Notice of Assignment is attached as **Exhibit B**.

3.   The State Court action was assigned for all purposes to the Honorable Sidney P. Chapin of the Superior Court of the State of California, County of Kern. It is scheduled for a Complex Case Management Conference on November 6, 2017.

4.   On June 12, 2017, Defendant filed and served its Answer to Plaintiff's Complaint ("Answer") in Kern County Superior Court. A true and correct copy of Defendant's Answer is attached as **Exhibit C**.

5. To the best of Defendant's knowledge, no other proceedings related hereto have been heard in the Kern County Superior Court.

6. Pursuant to 28 U.S.C. § 1446(a), the attached Exhibits A-C constitute all process, pleadings and orders filed or served in the State Court Action.

## I. STATEMENT OF JURISDICTION

7. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 (the "Act"). *See* 28 U.S.C. § 1332(d). In relevant part, the Act grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of 100 or more putative class members is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest and costs. The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of the Act's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

8. The Act applies to actions that were "commenced" on or after February 18, 2005. Because the State Court Action was filed on May 5, 2017, it was "commenced" on or after February 18, 2005, and removal is proper under the Act.

## II. TIMELINESS OF REMOVAL

9. Pursuant to 28 U.S.C. § 1446(b), Defendant filed this removal within 30 days after Defendant was served with the Summons and Complaint in the State Court Action on May 11, 2017.

## III. VENUE

10. Plaintiff originally filed this action in the Superior Court of California, for the County of Kern. Venue is thus proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## IV. PROCEDURAL REQUIREMENTS

11. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached to this Notice of Removal. Pursuant to 28 U.S.C. § 1446(d),

a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California, for the County of Kern.

## V. DEFENSES

12. The removal of this action to the Eastern District of California does not waive Defendant's ability to assert any defense to this action.

## VI. REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

### A. Plaintiff's Action is Pled as a Class Action

13. Under the Act, "'class action' means any civil action filed under Rule 23 of the Federal Rules of Civil Procedures or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

14. The State Court Action has been styled as a class action, pursuant to California Code of Civil Procedure § 382. *See* Plf's Compl. ¶ 1. California Code of Civil Procedure § 382 authorizes an action to be brought by one (1) or more representative persons as a class action. Plaintiff purports to represent a putative class "of all current and former non-exempt employees of Defendant who worked in California from December 16, 2012 to the present." *Id.* at ¶ 14.

### B. The Proposed Class Contains at Least 100 Members

15. Under 28 U.S.C. § 1332(d)(5)(B), district courts will have original jurisdiction over a class action case under the Act if the number of members of the putative plaintiff class is no less than 100.

16. This requirement is met here. Plaintiff's Complaint alleges that the putative class encompasses "all current and former non-exempt employees of Defendant who worked in California from December 16, 2012 to the present." *Id.* at ¶ 14.

17. According to that proposed class definition, there are 169 putative class members included in this case. *See* Declaration of Kevin Talley in Support of Notice of Removal of Civil Action to Federal Court ("Talley Decl."), ¶ 5, attached hereto as **Exhibit D**. Thus, the number of members of the putative class is sufficient to meet the Act's requirement for removal to federal court.

**C. There is Diversity Between at Least One Class Member and One Defendant**

18. The Act's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

19. Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). At the time Plaintiff commenced this action, Plaintiff resided in the State of California; according to the Complaint. Plf's Compl. ¶ 9 ("Plaintiff is an individual residing in the State of California.") Therefore, Plaintiff is a citizen of the State of California.

20. Conversely, Defendant Advanced Drainage Systems, Inc. is not a citizen of California. For diversity purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

21. Defendant is a Delaware corporation with its principal place of business in Hilliard, Ohio. Plf's Compl, ¶ 10; Talley Decl. ¶¶ 2-3. More specifically, Defendant maintains its corporate headquarters in Hilliard, Ohio, and its officers direct, control, and coordinate its business activities from Hilliard, Ohio. Talley Decl. ¶ 4. Thus, Hilliard, Ohio is Defendant's "nerve center" for purposes of diversity jurisdiction. For purposes of diversity jurisdiction, Defendant is not a citizen of the State of California. *See Hertz*, 599 U.S. at 80-81.

22. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

23. Accordingly, the named Plaintiff is a citizen of a State different from Defendant, and diversity exists for federal jurisdiction under the Act. *See* 28 U.S.C. §§ 1332(d)(2)(A).

### D. The Amount in Controversy Exceeds $5,000,000[1]

24. This Court has jurisdiction under the Act, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

25. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

26. Plaintiff's Complaint is silent as to the total amount in controversy. However, Plaintiff's failure to specify the total damages or other monetary relief sought does not deprive this Court of jurisdiction. Rather, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *See Rodriguez v. AT&T Mobility Servs.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.").

27. This burden is not onerous and does not obligate a removing defendant to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205 (E.D. Cal. 2008). Rather, "[t]he 'ultimate inquiry' is what amount is put 'in controversy' by the plaintiff's complaint, not what the defendant will *actually* owe." *Id.* (quoting *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005)). In determining the amount in controversy for CAFA, all potential damages based on the claims in the complaint, as well as attorneys' fees, are included. *See Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM DAD, 2011 U.S. Dist. LEXIS 119801, *8 (E.D. Cal. Oct. 14, 2011) ("In measuring the amount in controversy, a court must assume that the allegations of

---

[1] Defendant provides the following calculations only to demonstrate that the amount in controversy exceeds $5,000,000. Defendant makes no admission of liability or damages with respect to any aspect of this case, nor does Defendant waive their right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with any of his claims.

1  the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in
2  the complaint.") (quotations and citations omitted).

3  28. The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135
4  S. Ct. 547, 554 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal
5  need include only a plausible allegation that the amount in controversy exceeds the jurisdictional
6  threshold." Only if the plaintiff contests or the court questions the allegations of the notice of
7  removal, is supporting evidence required. *See id.* Otherwise "the defendant's amount-in-
8  controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation
9  is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553.

10  29. Defendants deny the validity and merits of Plaintiff's claims, the legal theories
11  upon which they are purportedly based, and the claims for monetary and other relief that flow
12  from them. Nevertheless, and notwithstanding Plaintiff's failure to allege the total amount of
13  damages claimed, the amount in controversy as alleged by Plaintiff in this case exceeds the sum
14  of $5,000,000.

- **Amount in Controversy for Unpaid Meal and Rest Break Claims**

16  30. In his First Cause of Action, Plaintiff alleges that "as a pattern and practice,
17  Defendants did not provide employees with meal periods and rest breaks and did not provide
18  proper compensation for this failure" and seeks to recover unpaid meal and rest break "premium
19  compensation pursuant to Labor Code § 226.7, 512, and the applicable IWC Wage Order,
20  including interest thereon." Plf's Compl. ¶¶ 29, 31.

21  31. The penalty for violating a meal or rest period requirement is equal to one hour of
22  the employee's regular pay for each day that the meal period or rest period was not provided.
23  The statute of limitations on claims for meal and rest period violations is three years. *Murphy v.*
24  *Kenneth Cole Productions*, 40 Cal.4th 1094, 1114 (2007). However, the statutory limitation
25  period is extended to four years where, as here, the complaint includes a claim for Unfair
26  Business Practices under California Business and Professions Code section 17200. *See* section
27  17208.

28

32. Based on Plaintiff's allegations that Defendant "did not provide employees with meal and rest breaks and did not provide proper compensation for this failure," it is reasonable to assume a 100% violation rate (i.e., one meal period violation and one rest break violation per shift) for purposes of calculating the amount in controversy under CAFA. As discussed above, Defendant employed 169 non-exempt employees in the State of California during the purported class period from December 16, 2012 through present. Talley Decl. ¶ 5. The putative class members typically worked at least five (5) shifts per week and worked approximately 23,345 total workweeks while in non-exempt positions during that period. *Id.* ¶¶ 6-7. Using the lowest hourly wage earned by each employee during that period, the putative class members received an average wage of approximately $15.00 per hour. *Id.* ¶ 8. Therefore, the total amount in controversy for Plaintiff's unpaid meal period and rest break claims (Count I) equals **$3,501,750** ((23,345 workweeks x 1 meal period violation per shift x 5 shifts per week x $15.00) + (23,345 workweeks x 1 rest break violation per shift x 5 shifts per week x $15.00)).

- **Amount in Controversy for Piece-Rate Paid Rest Break Claim**

33. Plaintiff's Second Cause of Action alleges that he and those purported class members compensated on a piece-rate basis are entitled to recover "unpaid compensation pursuant to Labor Code § 226.7, 512, and the applicable IWC Wage Order, including interest thereon," based on Plaintiff's allegation that "as a pattern and practice, Defendants did not provide employees with paid rest breaks based on their regular rate of pay or alternatively on a minimum wage basis." Plf's Compl. ¶¶ 35, 37.

34. Because the Complaint includes a claim for Unfair Business Practices under California Business and Professions Code § 17200, the statute of limitations for these claims is four years. *See* Lab. Code § 17208. If successful, Plaintiff and those purported class members compensated on a piece-rate basis would be entitled to the unpaid balance of minimum wage compensation, as well as liquidated damages in an amount equal to the unpaid minimum wages. Lab. Code § 1194.2.

35. Based on Plaintiff's allegation that Defendant "did not provide employees [compensated on a piece-rate basis] with paid rest breaks," it is reasonable to assume a 100%

1 violation rate (i.e., one unpaid ten (10) minute rest break per shift) for purposes of calculating the amount in controversy under CAFA.  Defendant has employed 48 individuals in the non-exempt driver position held by Plaintiff in the State of California from December 16, 2012 through present.  Talley Decl. ¶ 9.  For many, approximately half, of these drivers, some part of their compensation was based on the number of miles driven.  *Id*.  These drivers typically worked at least (5) shifts per week and worked approximately 5,322 total workweeks while in the driver position during the purported class period.  *Id.* ¶¶ 6, 10.  The lowest California minimum wage during the purported class period was $8.00 per hour.  Therefore, the total amount in controversy for Plaintiff's piece-rate employee paid rest break claim (Count I) equals **$35,480** ((5,322 workweeks x 10 minute unpaid rest break x 2.5 shifts per week x $8.00) + (an equal amount in liquidated damages)).

- **Amount in Controversy for Minimum Wage, Straight-Time, and Overtime Wage Claims**

36.   In his Third Cause of Action,  Plaintiff alleges that he and the purported class members are entitled to recover "minimum, straight time and overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit according to the mandate of California Labor Code § 1194," based on Plaintiff's allegation that "as a pattern and practice," Defendants regularly (i) "miscalculated overtime compensation by failing to pay overtime after eight hours per day and/or forty hours per week;" (ii) "failed to provide any compensation for the time Plaintiff and the Class Members spent in performing job duties prior to the start of their respective shifts;" (iii) "failed to compensate for all productive time;" (iv) "failed to pay for paid rest breaks at least at a minimum wage;" and (v) automatically deducted 30-minutes for meal periods even when Plaintiff and the Class Members were not properly provided meal breaks according to law."  Plf's Compl. ¶¶ 41-43.

37.   Because the Complaint includes a claim for Unfair Business Practices under California Business and Professions Code § 17200, the statute of limitations for these claims is four years.  *See* Lab. Code § 17208.  If successful, Plaintiff and the putative class members would be entitled to the unpaid balance of overtime wage compensation.  Lab. Code § 1194.2.

38.     Importantly, Plaintiff contends that "[a]s a pattern and practice, Defendants regularly failed to compensate employees their minimum wages straight time and overtime wages, where applicable, for all hours worked." Plf's Compl. ¶ 42 (emphasis added). When performing an analysis of the amount in controversy where a plaintiff alleges a regular or consistent policy or practice of failure to pay overtime, for the purpose of calculating the amount in controversy under CAFA, it is reasonable to assume one hour of unpaid overtime per employee per workweek. *See Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 U.S. Dist. LEXIS 53155, 17 (C.D. Cal. May 9, 2011) (defendant's estimates based on one hour of unpaid overtime per week per class member was conservative and reasonable given allegation of consistent failure to pay overtime). Given Plaintiff's contention that putative class members were "regularly" not paid overtime wages when a putative class member worked over 8 hours in a day or 40 hours in a week, it is reasonable (and very conservative) to assign a violation rate of one violation every workweek, or two violations every pay period. *See* Plf's Compl. ¶ 40.

39.     As discussed above, Defendant employed 169 non-exempt employees in the State of California during the purported class period from December 16, 2012 through present. Talley Decl. ¶ 5. The putative class members typically worked shifts lasting eight (8) hours or more and worked approximately 23,345 total workweeks while in non-exempt positions during the purported class period. *Id.* ¶¶ 6, 7; Plf's Compl. ¶ 6. Using the lowest hourly wage earned by each employee during the purported class period, the putative class members received an average wage of approximately $15.00 per hour. *Id.* ¶ 8. Therefore, assuming one hour of unpaid overtime per class member per workweek, the total amount in controversy for the overtime claim alone set forth in (Count III) equals **$525,262** (23,345 workweeks x 1 hour of unpaid overtime per workweek x $15.00/per hour x 1.5 premium for overtime compensation).

- **Amount in Controversy for Waiting Time Penalty Claim**

40.     Plaintiff's Fourth Cause of Action, a derivative claim for waiting time penalties, alleges that Plaintiff and the putative class members whose employment was terminated during the purported class period are entitled to recover waiting time penalties pursuant to Labor Code §

1  203 based on Plaintiff's allegation that Defendants regularly failed to pay "final wages pursuant
2  to Labor Code §§ 201 to 204." Plf's Compl. ¶ 47-49.

3        41.    Section 203 provides that, if an employer willfully fails to pay all wages due at
4  termination, the employer must, as a penalty, continue to pay the subject employees' wages until
5  the back wages are paid in full or an action is commenced, up to a maximum of 30 days
6  continuation of wages. The statute of limitations on a claim for waiting time penalties is three
7  years. *See Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389.

8        42.    If the allegations of the Complaint and Plaintiff's legal theories are correct, any
9  putative class member whose employment terminated more than 30 days ago is entitled to 30
10 days' continuation wages as a penalty under Labor Code section 203, and any putative class
11 member whose employment terminated within the last 30 days is entitled to continuation wages
12 from the date of termination through present.[2] Based on Plaintiff's allegations, it is reasonable to
13 infer "that each class member suffered some form of Labor Code violation at some point during
14 his or her employment, and thus was entitled to waiting time penalties." *Hernandez v. Towne*
15 *Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 U.S. Dist. LEXIS 86975, at *35 (C.D. Cal.
16 June 22, 2012) (analyzing amount of controversy under the legal certainty standard).

17       43.    An employer may establish the amount in controversy for a waiting time penalty
18 pursuant to California Labor Code Section 203 by: (1) assessing an average hourly rate based on
19 the regular rate applicable to putative class; (2) multiplying the average hourly rate by the
20 number of average hours worked per shift; (3) multiplying that number by the number of days in
21 the waiting time period; and (4) multiplying that number by the number of putative class
22 members. *Carranza v. Nordstrom, Inc.*, No. EDCV 14-01699 MMM (DTBx), 2014 U.S. Dist.
23 LEXIS 172307, *45 (C.D. Cal. Dec. 12, 2014). Fifty (50) individuals employed by Defendant in
24 non-exempt positions in the State of California were separated from their employment after
25 December 16, 2013. Talley Decl. ¶ 11. These employees typically worked shifts lasting eight
26 (8) hours or more. *Id.* ¶ 12. At the time of their termination, the average hourly wage among the

---

[2] Defendant denies that it failed to pay overtime wages, straight-time wages, minimum wages, or meal and rest period premiums to the putative class members; however, if Plaintiff's allegations were true, Defendant acknowledges that putative class members would not have received payment for any such wages within 30 days of separation, unless they made a request for payment to Defendant.

50 separated employees was $15.67. *Id.* ¶ 13. The average number of days in the waiting time period for these 50 employees is more than 29 days (47 employees were separated more than 30 days before the filing of the Notice of Removal, and one employee was separated on each of May 18, 2017, May 22, 2017, and June 1, 2017). *Id.* ¶ 47. Therefore, the total amount in controversy for Plaintiff's waiting time claim (Count IV) equals **$181,772** (50 separated putative class members x $15.67/hr x 8 hrs/day x 29 days waiting time period).

- **Amount in Controversy for Wage Statement Claim**

44. Plaintiff's Fifth Cause of Action, a derivative claim for wage statement penalties, seeks to recover damages under Labor Code § 226 based on Plaintiff's allegation that "Defendants failed to keep accurate records of Plaintiff and Class Members' gross wages earned, total hours worked, all deductions, net wages earned, and all applicable hourly rates and the number of hours worked at each hourly rate." Plf's Compl. ¶ 51-52.

45. Labor Code § 226(e) provides for damages in the amount of "fifty dollars ($50) for the initial pay period in which the violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." Damages are capped at four thousand dollars ($4,000) per employee. Lab. Code § 226(e)(1).

46. As discussed above, Plaintiff alleges that each putative class member was consistently and regularly underpaid by Defendant. Plf's Compl. ¶¶ 26-58. Therefore, for the purpose of calculating damages under CAFA, it is reasonable to assume that at least one Labor Code violation alleged in the Complaint would result in an inaccurate wage statement (unpaid minimum wages, unpaid overtime, unpaid meal and rest break premiums) each pay period.

47. Defendant employed 169 non-exempt employees in the State of California during the purported class period. Talley Decl. ¶ 15. Defendant provided counsel with the pay period histories of each purported class member. When Labor Code § 226 penalties are applied to the 169 employees in the amount of $50 for the initial pay period and $100 in each subsequent pay period, capped at $4,000 per employee, the total amount in controversy for Plaintiff's wage statement claim (Count V) equals **$600,300**. *See* Cal. Lab Code § 226(e)(1) ("[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with

1  subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the
2  initial pay period in which a violation occurs and one hundred dollars ($100) per employee for
3  each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand
4  dollars ($4,000)…").

- **Attorneys' Fees**

48. "Under CAFA, the Court can include potential attorneys' fees in determining the amount in controversy, if sought by the plaintiff." *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. Apr. 29, 2015) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees are properly included in determining the amount in controversy, regardless of whether they are mandatory or discretionary)). "In the class action settlement context, the Ninth Circuit has found that 25 percent of the common fund is a reasonable attorneys' fees award. *Hughes*, 106 F. Supp. 3d at 1083 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("benchmark" level for reasonable attorneys' fees in class actions in the Ninth Circuit is 25%).

49. Therefore, "if Defendant can establish by a preponderance of the evidence that the [amount in controversy is] at least $4 million dollars, the addition of twenty-five percent in attorneys' fees would necessarily meet the $5 million amount in controversy requirement under CAFA." *Garcia v. Wal-Mart Stores*, 2016 U.S. Dist. LEXIS 142807, 17-19 (C.D. Cal. Oct. 14, 2016).

50. Here, as set forth above, there is "substantial, plausible evidence" that the amount in controversy in Counts I-V of Plaintiff's Complaint totals **$4,844,464**. Therefore, a conservative and reasonable estimate of Plaintiff's attorneys' fees is **$1,211,116**, which is 25% of the total amount in controversy for the other claims. Thus, a reasonable calculation of the total amount in controversy, based on the allegations in Plaintiff's Complaint and the data cited herein, is **$6,055,580**, well in excess of the $5,000,000 statutory threshold. Although Defendant specifically denies Plaintiff's claims and denies Plaintiff will recover any of the relief he seeks, it

is clear from the allegations in the Complaint and the scope of the relief sought that the amount in controversy exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## VII. CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court remove the above-entitled action to federal court.

Dated: June 12, 2017                                      MORGAN, LEWIS & BOCKIUS LLP

By /s/ Kathy H. Gao
John S. Battenfeld
Kathy H. Gao
Attorneys for Defendant Advanced Drainage Systems, Inc.